# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| GERALD CARTER | CIVIL ACTION |
|---|---|
| VERSUS | NO. 17-2634 |
| PARKER TOWING COMPANY, INC. | DIVISION "3" |

## ORDER

Before the Court is the Motion for Partial Summary Judgment on Behalf of Parker Towing Company, Inc. [Doc. #16]. The Court originally set the motion for oral hearing on April 18, 2018. [Doc. #21]. However, given the temporal conflicts of counsel, the Court cancelled the oral hearing and took the motion under submission on the briefs. Having reviewed the pleadings and the case law, the Court rules as follows.

## I.  Background

Parker Towing Company, Inc. ("PTC") hired plaintiff Gerald Carter on September 2, 2016. He worked one full 21-day hitch and then returned for his second hitch in October 2016. [Doc. #23-1 at p. 3]. On the second hitch, he injured his lower back while working. [*Id.*]. Carter and another deckhand, Ashford Nelson, were breaking down tow and moving the rigging gear from one barge to another. [*Id*]. Nelson instructed Carter to toss or throw the rigging equipment, which included heavy metal wires and ratchets, from the barge on which they were standing to an adjoining barge. [*Id.* at p.5-6]. During this activity, Carter injured his lower back. [*Id.* at p. 4]. He began experiencing pain that day, and it progressively worsened over the course of the next day. [*Id.* at p. 7]. On that day, PTC tasked Carter with painting a small portion of its vessel, the TOM HUCKABEE, and Carter testified that he was unable to bend down to paint the vessel due to his

back pain. [Doc. #16-6 at pp. 3-5]. Ultimately, Carter filled out an accident report in which he stated that he could no longer work due to the pain. [*Id.* at pp. 3-4].

On March 28, 2017, Carter filed his complaint in which he asserts three causes of action: (1) Jones Act negligence, (2) general maritime law unseaworthiness, and (3) general maritime law maintenance and cure. [Doc. #1]. On August 8, 2017, PTC filed its answer and affirmative defenses to Carter's complaint. [Doc. #8].

## II. Summary Judgment Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.,* 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(a), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"

*Celotex*, 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare Sys., L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *See* Fed. R. Civ. P. 56(c)(3) ("court need consider only the cited materials"); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

The nonmovant's burden is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a

3

scintilla of evidence." *Little*, 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

**III.   Law and Analysis**

PTC moves for partial summary judgment on Carter's claim for maintenance and cure, arguing that Carter knowingly failed to disclose pre-existing back pain when he applied for employment with it. "Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel." *Jauch v. Nautical Serv., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006) (per curiam) (paraphrasing *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547, 548 (5th Cir. 1968)). "The shipowner's obligation is deep-rooted in maritime law and is an incident or implied term of a contract for maritime employment." *McCorpen*, 396 F.2d at 548. "A seaman may recover maintenance and cure even for injuries or illnesses pre-existing the seaman's employment unless that seaman knowingly or fraudulently concealed his condition from the vessel owner at the time he was employed." *Jauch*, 470 F.3d at 212 (citing *McCorpen*, 396 F.2d at 549).

In cases involving pre-existing conditions, courts distinguish between nondisclosure and concealment. *See id.* "If a vessel owner does not require a pre-employment medical examination or interview, a seaman must disclose his condition when in [the seaman's] own opinion the shipowner would consider it a matter of importance." *Id.* (internal citations and quotations omitted). "If, however, the vessel owner does require the seaman to submit to [a] medical examination as part of its hiring process, a seaman who misrepresents or conceals any material[ly]

4

medical facts, disclosure of which is plainly desired, risks forfeiture of his maintenance and cure benefits." *Id.* Thus, in cases where the seaman is required to submit to a medical examination or interview, to succeed on a "*McCorpen* defense" the defendant must prove the following: "(1) the claimant intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the withheld information and the injury complained of in the lawsuit." *Id.*

### A. Whether Carter intentionally misrepresented or concealed medical facts

"*McCorpen*'s first prong – which concerns intentional concealment – 'does not require a finding of subjective intent.' Failure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information . . . satisfies the intentional concealment requirement." *Collins v. Cenac Marine Servs., L.L.C.*, Civ. A. No. 16-16627, 2017 WL 5625873, at * 2 (E.D. La. Nov. 22, 2017) (quoting *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005) ("Seamen must not be allowed to blatantly misrepresent their medical history on questionnaires and then plead ignorance before a jury.")); *see also LeBlanc v. L.A. Carriers, L.L.C.*, No. 15-1657, 2016 WL 1268342, at *7-9 (E.D. La. Mar. 31, 2016) (explaining that the subjective intent of the plaintiff is irrelevant).

On August 26, 2016, PTC required Carter to attend a pre-employment medical examination by Aletta Brewer, CRNP, with DCH Occupational Health in Tuscaloosa, Alabama. During this examination, Carter completed an "Application for Merchant Mariner Medical Certificate," which posed several questions regarding Carter's current and past medical treatment. [Doc. #16, Ex. 1 at p. 4 (SEALED)]. The form asked Carter: "To the best of your knowledge, have you ever had,

5

required treatment for, or do you presently have any of the following conditions?" [*Id.*]. Next to "[b]ack pain, joint problems, or orthopedic surgery," Carter checked "No." [*Id.*]. The questionnaire further asked Carter to "report all prescription medications prescribed, filled or refilled, and/or taken within 30 days prior to the date that the applicant" signed the questionnaire, and "all prescription medications, and all non-prescription (over-the-counter) medications including dietary supplements and vitamins, that were used for a period of 30 or more days within the last 90 days prior to the date that the applicant" signed the questionnaire. [*Id.* at p. 5]. Carter wrote "none" on the application, indicating that he had neither taken nor had he been prescribed any medications within 30 days before the questionnaire was completed. [*Id.*].

However, on August 8, 2016, 18 days before he completed the medical questionnaire, Carter visited the Rusk Medical Clinic in Dekalb, Mississippi, where he complained of chronic, lumbar-type back pain to Martha M. Puckett, FNP. [Doc. #16, Ex. 5 at p. 6-8]. Under the "Chief Complaint/Reason for Encounter" section, Puckett wrote, *inter alia*, "CHRONIC PACK PAIN." [*Id.* at p. 6; Ex. 2 at p. 19]. Puckett also noted in her "History of Present Illnesses" that Carter complained that his "[b]ack ha[d] been hurting for some time," and that he had been involved in a motor-vehicle accident three years earlier and that he "had back pain after that." [Doc. #16, Ex. 5 at p. 6; Ex. 2 at p. 19]. Puckett diagnosed Carter with Dorsalgia. [*Id.*, Ex. 5 at p. 7]. At her deposition, Puckett explained that Dorsalgia is a "lumbar-type pain," and is related to the "muscle skeleton system." [*Id.*, Ex. 2 at p. 17]. Puckett also noted that Carter complained of a large lipoma on the left side of his upper back and diagnosed him with Lipomatosis. [*Id.*, Ex. 5 at p. 7]. Puckett clarified at her deposition that Carter complained of two, separate types of back pain: (1) chronic,

6

lumbar-type back pain – Dorsalgia; and (2) pain from the lipoma on his back – Lipomatosis. [*Id.*, Ex. 2 at pp. 21-23]. To treat Carter's Dorsalgia, *i.e.*, lumbar back pain, Puckett prescribed Carter with three different types of injections: four units of Decadron (one milligram), one unit of Depo-Medrol (40 milligrams), and four units of Toradol (15 milligrams). [*Id.*, Ex. 2 at pp. 30-33; Ex. 5 at p. 7]. She testified that each of these injections was to treat Carter's Dorsalgia [lumbar back pain], and not for his Lipomatosis [the lump]. [*Id.*, Ex. 2 at pp. 30-33]. Puckett also prescribed Carter with Cyclobenzaprine, 10-millgram tablets, to take three times a day as needed. [*Id.*, Ex. 5 at p. 7]. She testified that the Cyclobenzaprine was to treat Carter's back pain and not to treat the lump. [*Id.*, Ex. 2 at pp. 28-29, 35]. Puckett also completed a "work excuse form" for Carter to present to his employer. [*Id.* at pp. 33-34]. She testified that the "work excuse form" was specifically for Carter's Dorsalgia [lumbar back pain] and had nothing to do with his Lipomatosis [the lump]. [*Id.*].

Two days later, on August 10, 2016, just 16 days before he completed PTC's medical questionnaire, Carter returned to Puckett for a "follow up on back pain." [*Id.*, Ex. 5 at p. 1]. During Carter's visit on August 10, 2016, Puckett noted that he presented with "spinous process tenderness," his back was hurting "a little," that he suffered from Dorsalgia [lumbar back pain], and she recommended that he "use heat/ice on back" to alleviate the back pain. [*Id.*, Ex. 2 at pp. 34-35; Ex. 5 at p. 3]. Puckett also told Carter to continue taking the Cyclobenzaprine, 10-millgram tablets, as prescribed. [*Id.*, Ex. 5 at p. 3]. She reiterated her testimony that the Cyclobenzaprine was for Carter's back pain and not for the lump. [*Id.*, Ex. 2 at p. 35]. These records reveal that 16

days before he completed PTC's medical questionnaire, Carter was suffering from lumbar back pain that required prescription medication and injections.

Carter raises several arguments to combat Puckett's deposition testimony and the medical records from his two visits to Rusk Medical Clinic. He first argues that there is no evidence that he had any intent to conceal any prior lower back pain because at his deposition he testified that he had never suffered from lower back pain but only from upper back pain (*i.e.*, the lipoma). [Doc. #23, Ex. 1 at pp. 145, 238-39]. However, and as noted above, in *Brown*, the Fifth Circuit determined that the intentional concealment prong of the *McCorpen* defense does not require a finding of subjective intent. 410 F.3d at 173. Simply failing to disclose the required medical information satisfies this prong. *Collins*, 2017 WL 5625873, at * 2 (quoting *Brown*, 410 F.3d at 171).

Arguing that there is no indication of the location of his pain in the medical records, Carter maintains that here, he complains of lower back pain, and he only presented to Puckett with upper back pain. But that is not the case, according to Puckett, who explicitly testified that Dorsalgia is a "lumbar-type pain," and is related to the "muscle skeleton system." [Doc. #16, Ex. 2 at p. 17]. And "lumbar" means "of, relating to, or constituting the loins or the vertebrae between the thoracic vertebrae and sacrum," which area constitutes the lower back.[1] In any event, Carter admits that he suffered from some sort of back pain – albeit upper back pain only – when he presented to Puckett, and the Court finds that this alone required him to check affirmatively in the box next to "[b]ack pain, joint problems, or orthopedic surgery." [Doc. #23 at p. 12].

---

[1] https://www.merriam-webster.com/dictionary/lumbar.

Carter also maintains that the *McCorpen* defense was not created to force a seaman to inform a potential employer of every ache and pain from which he has suffered, and a genuine issue of material fact exists as to whether any back pain from which he suffered constituted a serious medical condition – as envisioned by *McCorpen* – or if it was more "akin to a cold." *Gregory v. Kirby Inland Marine*, Vic. A. No. 08-4183, 2009 WL 1402229 (E.D. La. May 14, 2009). Carter even cites the deposition of Adam Lewis, M.D. – Carter's treating neurosurgeon – for the proposition that "even his own treating neurosurgeon agrees that it would not be unreasonable to fail to note a minor instance of upper back pain in connection with completing the somewhat unclear form." [Doc. #23 at p. 7 (citing Doc. #23, Ex. 3 at p. 37)]. But two visits to a clinic within two days on specific complaints of back pain, three steroidal injections, and a prescription for Cyclobenzaprine (which produces muscle relaxant effects) belies any assertion that Carter suffered from something "akin to a cold." Moreover, even Lewis admitted that Carter should have informed PTC of his motor vehicle accident and the resultant back pain. [Doc. #27-1 at p. 38].

There can be no doubt that PTC's medical questionnaire "was clearly designed to elicit the requested medical information." *Collins*, 2017 WL 5625863, at *3 (quoting *McNabb v. Bertucci Contracting Co.*, Civ. A. No. 12-1342, 2013 WL 1099156, at *5 (E.D. La. Mar. 15, 2013). The Court finds that Carter submitted false and misleading information to PTC when he indicated on the medical questionnaire that he had never been treated for or experienced back pain and that he had not been prescribed any medications within 30 days of signing the questionnaire. And, despite the medical questionnaire's warning that providing false information could result in prosecution

under 18 U.S.C. § 1001, Carter signed the questionnaire affirming that the information submitted to PTC was complete and true. [Doc. #16, Ex. 1 at p. 5]. The Court finds that PTC has satisfied the first prong of the *McCorpen* defense.

> B. **Whether the nondisclosure of such injury was material to PTC's decision to hire Carter**

With respect to *McCorpen*'s second prong, "[t]he fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis." *Brown*, 410 F.3d at 175.

PTC submits the affidavit of Alison Phillips, the Recruitment Manager at PTC with the authority to offer and to rescind employment, who states that Carter's concealment and non-disclosure of his preexisting back pain and injury was material to PTC's decision to hire him. [Doc. #16, Ex. 3 at ¶¶ 3, 10]. Phillips testified that had PTC known of Carter's pre-existing back pain, injury, and current prescription pain medicine, PTC would not have hired him as a deckhand, which, at times, requires heavy lifting and labor. [*Id.* at ¶¶ 8, 10]. There can be no debate that the medical questionnaire specifically asks about Carter's prior back pain. [*Id.*, Ex. 1 at p. 1]. Because the medical questionnaire specifically asked Carter a medical question, and because such inquiry is rationally related to Carter's physical ability to perform his job duties as a deckhand for PTC, Carter's nondisclosure and concealment of his prior back pain and injury was material to PTC's decision to hire him. *See Collins*, 2017 WL 5625873, at *3. The Court finds that PTC has satisfied the second prong of *McCorpen*.

Carter now has the burden of pointing out a genuine dispute of material fact for trial. *Matsushita*, 475 U.S. at 587. To do so, Carter must present evidence that PTC would have hired him even if he had disclosed his prior back injury. *See Jauch*, 470 F.3d at 212; *Dennis v. ESS Support Servs. Worldwide*, No. 15-690, 2016 WL 3689999, at *4 (E.D. La. July 12, 2016) ("If, however, a plaintiff shows he would have been hired regardless of whether the concealment was material, the employer loses on the second prong."). As noted above, Phillips testified – in her capacity as Recruitment Manager – that PTC would not have hired Carter as a deckhand had it known of his prior back injuries and pain, because the position of a deckhand requires heavy lifting and labor and that hiring Carter as a deckhand would not only expose him to injury but could also compromise the safety of PTC's other employees on the vessel. [Doc. #16, Ex. 3 at ¶¶ 8-10].

Carter offers no evidence to rebut Phillips' affidavit. He maintains that he worked fine until the date of his accident in October 2016 – approximately two months after PTC hired him. That is not evidence but argument. Neither is it relevant. In *Thomas v. Hercules Offshore Services, L.L.C.*, the Fifth Circuit held that "the fact that the employee could perform the heavy labor tasks when he was first hired is 'irrelevant' because the employer 'based its hiring decision (at least, in part) upon whether applicants had 'Past or Present Back'" pain. 713 F. App'x 382, 387 (5th Cir. 2018) (citing *Brown*, 410 F.3d at 175). Accordingly, Carter has not met his burden here.

    **C.**    **Whether there is a direct connection between the information withheld and the injury for which Carter complains of in this lawsuit – lumbar back pain**

Lastly, PTC must show that "a connection exists between the withheld information and the injury complained of in the lawsuit" in order to establish the third prong of the *McCorpen* defense. *Brown*, 410 F.3d at 171. This Court has explained:

> The "connection" inquiry does not turn on whether the plaintiff's misrepresentations caused his injuries in the normal sense. A successful *McCorpen* defendant need not submit any proof that the plaintiff's omission caused the injury. Rather, the *McCorpen* defense will succeed if the defendant can prove that the old injury and the new injury affected *the same body part*.

*Johnson v. Cenac Towing, Inc.*, 599 F. Supp. 2d 721, 728 (E.D. La. 2009) (citing *Brown*, 410 F.3d at 176) (emphasis added) (holding that because the injuries the plaintiff suffered while working aboard the vessel were in the same location of the lumbar spine as his previous injuries, the causal connection was established); *see also LeBlanc*, 2016 WL 12683342, at *7-9 (collecting cases) (denying the plaintiff's argument that the prior condition and the current condition must be identical and cause similar symptoms, and instead holding that the injuries must generally be to the same part of the body). PTC must therefore demonstrate that the old and "new" injuries were both to Carter's back. *See LeBlanc*, 2016 WL 12683342, at *7-9; *see also Keys v. Halliburton*, No. 88-1523, 1989 WL 54224, at *4 (E.D. La. May 17, 1989) ("Here, both injuries at issue were medical injuries affecting the low back.").

Here, there is no dispute that one of Carter's older injuries for which he presented to Puckett – lower back pain – and his injury caused by the alleged accident underlying this lawsuit – lumbar back pain—"affect the same body part." *See Cenac Towing*, 599 F. Supp. 3d at 728; *Keys*, 1989 WL 54224, at *4. Specifically, and as noted above, on August 8 and August 10, 2016, Carter presented to Puckett complaining of back pain and was diagnosed with Dorsalgia, which Puckett explained is a "lumber-type pain" and is related to the "muscle skeleton system." [Doc. #16, Ex. 2 at 17]. Carter confirmed in his deposition that his "new" injury underlying this lawsuit is related to his lower back. [Doc. #16, Ex. 4 at pp. 215-17]. Thus, PTC has submitted competent summary

judgment evidence that demonstrates that the "new" injury – lower back pain – and the old injury – lumbar back pain – affect the same body part, and there is a direct connection between such injuries.

Carter contends that his "new" injury is to a different part of his body or that the conditions need to be identical or at least cause similar symptoms. But these arguments have been raised by Carter's counsel before, and this Court has dismissed them. *Leblanc v. L.A. Carriers, L.L.C.*, Civ. A. No. 15-1657, 2016 WL 1268342, at *5-6 (E.D. La. Mar. 31, 2016). In *Leblanc*, the court held that "[p]laintiff's argument that the conditions need to be identical or at least cause similar symptoms is unsupported by the case law." *Id.* Similarly, in *Ladnier v. REC Marine Logistics, L.L.C.*, counsel for the plaintiff argued that the conditions needed to be identical or at least cause similar symptoms to a previous injury. Civ. A. No. 14-1278, 2015 A.M.C. 1919, 1930 (E.D. La. June 19, 2015). Rejecting this argument, the court concluded that "[p]laintiff's complained of injury – a right rotator cuff tear – involves the same part of the body affected by Plaintiff's shoulder impingement syndrome." *Id.* at 1931. The court ultimately held that the defendant had established a causal connection. *Id.*

The Fifth Circuit has consistently held that "there 'is no requirement that a present injury be identical to a previous injury.'" *Thomas*, 713 F. App'x at 388 (citing *Brown*, 410 F.3d at 175). Contrary to Carter's arguments, courts find that the new and old injury must simply affect "the same body part." *Johnson v. Cenac Towing, Inc.*, 599 F. Supp. 2d 721, 728 (E.D. La. 2009); *see also Thomas*, 713 F. App'x at 389 ("Here, Thomas's previous, concealed injuries and her current injuries both involve her lower back and neck. . . . [W]e conclude Hercules has satisfied the third

13

prong by showing a causal link between the prior injuries and current injuries.") This argument fails.

**IV. Conclusion**

Accordingly, and for the foregoing reasons,

**IS ORDERED** that the Motion for Partial Summary Judgment on Behalf of Parker Towing Company, Inc. [Doc. #16] is GRANTED.

New Orleans, Louisiana, this 3rd day of May, 2018.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**